May it please the court, my name is Ben Akin, counsel for Alisio Lorenzo. I'd like to reserve two minutes for rebuttal. The government failed at each crucial step in this case to show that Mr. Lorenzo is subject to removal. Mr. Lorenzo was lawfully in the United States, has lived here for 35 years, and has now been held in immigration detention for almost four years. But there is no basis for his removal or for his ongoing detention. The government was required, but failed, to show or even explain why his California crimes of conviction are not broader than federal controlled substance law, even though California covers more isomers than does federal law. And to compound matters, the government failed to adequately document the specific state offense to which Mr. Lorenzo pleaded guilty. So whether viewed under the categorical approach or the modified categorical approach, the removal order here cannot be sustained. Turning first to the categorical approach, California's definition of methamphetamine is categorically broader than the federal definition because California law covers more isomers than federal law does. The government did not dispute that before the IJ, they did not dispute it before the BIA, and they have not disputed it here. The government's primary response to this argument in its brief was to claim that Mr. Lorenzo had waived this issue, but we devoted a full page to it at page 16 of our opening brief, and we preserved it both before the IJ and the BIA. The government's only other argument is to say that this court rejected the same argument in Vega-Ortiz, but Vega-Ortiz presented a different issue. That case involved LMF, which both federal and state statutes appear to criminalize, but federal law elsewhere creates an exception for it. The question was whether the state might recognize a similar exception. In short, that case did not involve a state statute that was facially broader than its federal counterpart. This court explained in Vidal, citing Grassell v. United States 488F3-844, that when the text of the statute expressly includes in its definition that which is expressly excluded from the generic federal definition, the statute is overly inclusive, and there is no need to inquire any further. That is exactly the case we have here, and that overbreadth in state law decides this case. Your honors have asked us to be prepared to discuss both Adams and Schrader. Those cases confirm that the California law criminalizing methamphetamine, its salts, its isomers, and salts of its isomers is not divisible into those constituent parts, but rather lists multiple means of committing a single crime. Schrader, for instance, notes that possession of multiple drugs, all of one kind, cannot be charged as separate offenses. That means that the single offense of possession of methamphetamine encompasses multiple means of committing the same crime, some of which are not means of committing the federal offense. That renders the state statute categorically overbroad, and that overbreadth means that Mr. Lorenzo is not removable and ends this case. But even setting the isomer issue aside, Mr. Lorenzo is not removable under the modified categorical approach either. The Supreme Court has emphasized time and again, most recently in Mathis, that the modified categorical approach should be used only in a narrow set of cases where we are sure what offense a defendant pleaded guilty to. And the bottom line from panel decisions of this court, including both Torrey Jimenez, which the government relies on, and Medina Lara, which we have relied on, is that the modified categorical approach is not a valid endeavor where there is a reason to doubt the connection between the charging document and the minute order or abstract of judgment. In Medina Lara, a simple miscellaneous A appearing on the abstract of judgment casts enough doubt that the court could not draw reliable conclusions about the offense the defendant there pleaded guilty to. There are several facts in this case that, in combination, undermine the reliability of the scant record evidence the government has presented. First, the minute order in this case notes that Mr. Lorenzo pleaded guilty to counts 1 and 2, and then notes that the sentencing court dismissed the balance of the charging document. But there were only two counts in the original charging document, and Lorenzo pleaded guilty to two counts, so it's not clear what was being dismissed. That raises the possibility that there was some amendment to the charges in the seven months between when charges were brought and the guilty plea, excuse me, and the nolo contendere plea. That brings us to two more critical facts in this case. As this court recognized in both Vidal and Medina Lara, when a defendant pleads nolo contendere under People v. West, California courts allow oral amendment to an information without any requirement that anything be filed or that there is even a docket entry. Both cases cited Sandoval, which noted that this has happened in a number of cases, and said there is no talismanic significance to the existence of a written information in California courts. But this case goes even a step further because the government did not even introduce the docket, so there could have been an actual written superseding information and we would have no idea. The government has not cited any case where there is no docket sheet, where a court acknowledged that state law allows oral amendment, and where a minute order indicates that the balance of the charges were dismissed, and yet a court held that it could draw a link between the minute order and the original charging document. The record here is thinner than any case that the government has cited in which it prevailed under the modified categorical approach, and would mark a further departure from Vidal. We do not have the plea agreement or the plea colloquy as Shepard originally envisioned, nor do we even have a docket sheet that would at least indicate that no superseding information had been filed. And the minute order here lacks the critical phrase, as charged in the complaint. In the face of such uncertainty, the government cannot show that the link between the charging document and the minute order is so clear and convincing that Mr. Lorenzo is removable. If Your Honors have no further questions, I'd reserve the remaining of my time for rebuttal. Roberts. Thank you, counsel. Go ahead. I have one question. Yes, Judge. What does the charging document show, whatever documents there are? I'm sorry. The charging document in this case shows that Mr. Lorenzo was charged with two counts, one under 11378 and another under 11379A, both for methamphetamine. But the minute order in the case does not list methamphetamine. But if methamphetamine is broader in its definition than the federal statute, as you're suggesting, what difference does it make if it says methamphetamine? That's correct, Your Honor. Assuming this Court accepts our argument that methamphetamine alone is not enough because California law is broader than federal law, then even were the Court to apply the modified categorical approach, it wouldn't matter because we don't have the specific isomer or salt, et cetera, that Mr. Lorenzo was charged with. However, we don't even need to get that far because the state statute is broader on its face than the federal statute. The modified categorical approach should not even apply, and we simply prevail under the categorical approach. Right. That's just your alternative argument. That's correct, Your Honor. Okay.  Further questions? Thank you. No. May it please the Court. I'm Scott Stewart on behalf of the Attorney General. In this case, the BIA and IJ concluded that Petitioner Eliseo Ateneo Lorenzo is removable because he has two convictions for violating a state law relating to a controlled substance. The agency's rulings were correct, and this Court should deny the petition for review. Since the main briefing in this case, Your Honors, I think the central dispute in that main briefing about just the divisibility of these California health and safety code statutes has been resolved by this Court in Martinez-Lopez, the en banc decision, Ocampo-Estrada, and Barragan. And I think the two remaining disputes that I think is the focus here, Your Honor, is whether the isomer issue somehow changes things and whether how to apply the modified categorical approach if we get there. So why don't you talk to us about the isomer issue? Sure, Your Honor. I think the isomer issue, the key problem here was it's a failure of showing that there is one. So far as this record shows, it doesn't show very much. I mean, what we have in the administrative record are arguments from Petitioner's counsel before the agency that there are geometric isomers of methamphetamine. But so far as the record shows, there's no evidence that there are any geometric isomers of methamphetamine at all. The mention of geometric isomers. You mean there's no difference in the statutes, in the face of the statutes? There is a difference as far as the isomers. Yeah. So the state statute is broader than the federal statute. It covers more. Only if — well, there are two reasons we don't get there, Your Honor. I think the first is there is no — there's been no showing that there is actually a geometric isomer, that methamphetamine even has geometric isomers. There's no evidence of that. This Court has time and again — In the statute, isn't there evidence of it? Doesn't the statute say that it covers certain isomers and not others? It doesn't say that for methamphetamine specifically, Your Honor. It's a blanket provision that applies to that division of the California Health and Safety Code as a whole, Section 11033. And it only applies to the extent that what it's saying, you know, would exist in the world. So, you know, some substances may have, you know, multiple kinds of isomers. Some wouldn't necessarily have multiple kinds of isomers. So far as we know, there's no indication in this record that there is such a thing as a geometric isomer of methamphetamine. There's just no showing of that. So that's, I think, one problem. There may be geometric isomers of other things, you know, perhaps cocaine or, I believe, as one mentioned in here. But we just don't know that geometric isomers exist at all for methamphetamine on this record. There was no evidence submitted on that so far as I'm aware. The second issue, Your Honor, is we get to the issue under Gonzales v. Duenas-Alvarez, reaffirmed in the Supreme Court's decision in Moncrief, where the California statute says methamphetamine, it's salts, isomers, and salts of its isomers. That's correct, Your Honor. We do know that there are isomers in methamphetamine. We do know that, Your Honor, because both the federal and the state versions both say the language that Your Honor just read. The issue here is whether there are both, there are methamphetamine isomers other than optical isomers. And if there are no such isomers, then we have a complete match and there's no problem. It says in the California Health and Safety Code, as used in this division, except it's otherwise defined, the term isomer includes optical and geometrical isomers. That's true, Your Honor, but that doesn't necessarily say that for every substance that has isomers, geometric isomers exist. And we don't have any showing in this record that geometric... It doesn't have to show it exists. The statute is broader because the state statute covers the two types of isomers and the federal statute doesn't. But I think that then just backs into the point that I was about to reach, Your Honor, about Moncrief and Duanis Alvarez, that we don't know that there are any prosecutions for actual geometric isomers, just as a matter of fact, in California. There's, you know, I haven't been able to find one. Counsel on the other side hasn't been able to find a case where geometric isomers were prosecuted. Are you arguing that scientifically it's been established that meth does not have geometric isomers? I'm saying, Your Honor, that so far as I'm aware, you know, it hasn't been established that there are any geometric isomers. That's all. Right. For any drug. No, for methamphetamine. Yes. So you're saying it's not been affirmatively established that there are? That there are. Have they been ruled out? The immigration judge here did rule them out, Your Honor. Based on what? The judge alluded to scientific evidence. I don't believe that that's in the record. But it does come back to the burden point here does rest on the petitioner. As Duanis Alvarez says, that when you have, you know, a statute like this that, you know, on its face for the most part matches, but there may be some theoretical application of overbroadness, you look to see whether the state actually prosecutes the offense that would make it overbroad. And to do that, they need to show that it happened in their case or in some other case from the relevant state jurisdiction. That's Duanis Alvarez at 193, Your Honor, reaffirmed in Moncrief. And here we just, we still have no indication that California actually prosecutes geometric isomers. We don't, as I said before, this is why I was emphasizing earlier, that we just, we don't know that there are geometric isomers of methamphetamine. Well, let me see if I can summarize where I think your argument is. One, you seem to be conceding that on its face the California statute is broader. True? I wouldn't concede that, Your Honor, because I think that this court has, I mean, I just don't think the geometric isomer piece applies here. No, but I mean, on its face, leaving aside the question of the chemistry, it would seem on its face that it's broader. I wouldn't go that far, Your Honor, just because I think that this is. Do you say they're different, the state and federal statutes on their face? I mean, I think for that you have to go, you know, know whether the particular isomers come in multiple forms here. And, I mean, so far as we know, I mean, the two schedules, you know, if you're just going schedule to schedule, they, I mean, they match up as far as salts and salts of isomers. And just given how many times this court has applied the modified categorical approach to methamphetamine, Your Honor, I'd be reluctant to make any, you know, statement against those decisions. No, I'm not arguing about that. I'm just trying to take it piece by piece. I mean, as I look at the statutes, it's different. Now, your second argument is they're actually not different if you're looking at the chemistry and the prosecution. That's what I take your argument to be. But if you're saying that they're the same, then that's the language is different. They refer to geometric isomers, and you're saying, well, there are none. So far as we know from this record, yes, Your Honor. Right. But that's a different argument. In meth? In methamphetamine, yes, Your Honor. Yes, that's right. On that, I'd just sort of further emphasize, you know, Your Honor, that we just, again, we Can I get to the LD meth and LD meth and DMeth issue? I'm sorry, say again, Your Honor. I mean, there are different, if you look at, for example, in the so-called doping scandals in the Olympics, they do make a difference between LD meth and DMeth, don't they? And those are structural differences in methamphetamine. Right. But my understanding is, and I'm not, I didn't even minor in chemistry, Your Honor, but my understanding is that both of those are still optical isomers. I believe that there are two different kinds of isomers that are both optical. Yeah. And so far as I've been able to find out, that's as far as it goes. It just doesn't reach geometric isomers. Okay. I'm going to get to the modified categorical approach. You're down to about a minute. Sure, Your Honor. Just briefly, you know, I'd emphasize that this Court, in Torrey Jimenez and Kabontak, have emphasized that when you have a minute order, as you do here, that is keyed to the charging document and it makes What does a minute order show? What does it show? It shows meth, right? I'm sorry, Your Honor. What does the minute order show? The minute order shows, Your Honor, sort of two key things. One is that the defendant pleaded to counts one and counts two, which both identified methamphetamine as the relevant substance. And then it mentioned, you know, it dismissed to the extent there was anything else in the charging document, the balance of that document, making clear that the minute order was keyed to the charging document. If meth includes isomers and salts and other things, what does it help to look at the document, which is overbroad? Your Honor, I don't think it's overbroad. Oh, no, but if it is, if it's not overbroad, you win at the beginning. But if meth in California includes more than the federal statute, how do you gain by looking at something which is just meth? May I answer that, Your Honor? Sure, absolutely. Thank you. Your Honor, I mean, I see your point that, you know, if it's overbroad, you know, then under Mathis and like cases, you know, if it's just categorically overbroad, period, full stop, and meets the realistic probability test, you don't get to the modified categorical approach. But for the reasons given in our briefs and today, we don't have a categorical overbroadness. Okay, but if you do get to it, what does meth add to your argument? If meth is okay, you don't have to go to the categorical modified approach. And if you go to the modified approach, all you see on it is meth. Well, the reason you get there, Your Honor, is because even if you're just putting aside the isomer question, there are some, you know, there are other reasons to conclude that this statute is overbroad because I believe it includes certain other drugs, not meth, that don't appear on the Federal document, which is why you end up having to make the divisibility determination, which this Court has made, and then you get to the modified categorical approach. Okay. All right. Any further questions? Thank you, Counsel. Thank you, Your Honor. Just two points, Your Honors. First, we agree with the government. The record here does not show very much one way or the other. However, that resolves this case in Ruiz-Vidal 1, that's 473 F. 3rd at 1076. This Court held that the plain language of the INA requires the government  is not an alien substance. state law conviction for possession is one that is covered under Section 102 of the Controlled Substances Act. To the extent the record is silent, that is a failure of the government, not of Mr. Lorenzo. That turns the government's argument about the realistic possibility test. That is what the BIA said. However, the government did not endorse that test in its brief, and the reason it didn't is because this Court has rejected the realistic possibilities test application in a case like this, where the state statute is facially broader than the federal offense. That's in both Vidal and in Grissel. As I mentioned in the first part of the argument, Vidal says that when the text of the statute expressly includes in its definition that which is expressly excluded from the generic federal definition, the statute is overly inclusive, and there's no need for the sort of legal imagination that Duane Alvarez and then Moncrief prohibited. And indeed, in Vega-Ortiz, quoting I believe Burgos Ortega, the Court recognized that what was going on there was that there was a question as to whether the state statute might recognize a parallel exception to what the federal statute offered. This is not that case. If Your Honors have no further questions, we would ask that you grant the petition for review. Thank you for your argument. The case is argued to be submitted for decision. Thank you both.
judges: Reinhardt, Thomas, Fisher